Good morning, Your Honors. Once again, may it please the Court, I'm Mike Fowler. I'm representing Gregory McRae, who served honorably for 20 years plus as a member of the NOPD, except for his totally out-of-character, bizarre act on September 2nd, 2005, three days after Katrina flooded New Orleans. On that day, after three sleepless days and nights of rescue effort, he burned a car containing the corpse of Henry Glover. The facts are well known to two members of this Court as they sat on the appeal of the original conviction of the 18 U.S.T. 242 for the unreasonable seizure of the car, secondly, obstruction of a federal investigation under Section 1519, and use of the fire to commit a felony under 1519, Count 7. He was sentenced to 17 years and was remanded for reconsideration. The case was remanded for reconsideration. We agree with you and the government that as a result of Yates, the 1519 has to be vacated and it needs to be sent back for resentencing, if we end up deciding that. Then tell me what's left and how this PTSD argument affects anything that would be left. Your Honor, what's left, obviously, since the Yates decision disposed of the obstruction count, what's left is count 4, the seizure of the unreasonable seizure of the car, which will then be the basis of a different guideline determination, and, of course, the use of fire to commit a felony. And are you contending that the PTSD evidence affects those two counts? I beg your pardon, Your Honor? Is it your contention that the PTSD evidence that you feel should have been developed is relevant to the 242 and 844 counts, and if so, can you focus on that? Surely. Because your briefing was more general because it was before Yates, so I want to get a focus. We understand, Your Honor, and that is the focus that as to the conviction of even what's left. The issue of intent was at the core of this prosecution. The government always contended that this was a cover-up, a known cover-up of a police shooting and it was a grand scheme. The intent, the state of mind of Gregory McRae is the only issue that was really significant. In our motion for a new trial of newly discovered evidence, we had two issues. The one Your Honor has just mentioned, and the other was the blogging, which I, because of time constraints, I've put aside to focus on what Your Honor wants me to focus on. I want you to focus specifically, I mean, I understand the general argument that's being made about how the PTSD impacts his thinking at the time, but I specifically want to understand what was the mindset he had to have to violate 18 U.S.C. 242 and 18 U.S.C. 844, and how does this evidence affect that? Can you be more specific, in other words? I did not try the case, but I tried a lot of criminal cases. And what you had is the, his state of mind, our position is, is that he was suffering from mental, he was imbalanced. He had suddenly snapped as a result of his rescue efforts for three nights, bouncing off bodies, headless and otherwise, and he snapped when he burned the body for the reason being he did not want to see another body rotting. Now, the question is, either he had some, either he was involved in a cover-up, as the government claims, although there was never any evidence, I should say, a cover-up, that he knew that a policeman had done it, or the only other explanation there is for this bizarre issue that the psychologist was so important. This is the psychologist who, at the government, I shouldn't say the government, not the prosecutor, but pretrial services, the probation officer, Jim Limey, after talking to Gregory, to Greg McRae, decided he needed to see a psychiatrist, a psychologist, and he had him see Dr. Janssen beginning in just early September of 2010, saw him right through till, I think it was, he was in prison in March, the only time he didn't see him was during the trial in December. And what you have is, in the notes, you see where he had a complete, there's a note of September 23rd where he said the man's suffering from PTSD. None of those notes, nor his summary report given to probation for purposes of preparing the pre-sentence report, which turned over to the prosecutor, excuse me, to the defense. In fact, I don't think the prosecutor had it either, I'm sure they didn't. But in that, it was clear, and we quote it in our brief, as to what he said, that this man was suffering from PTSD. I suggest, had that testimony, what you had without it, was simply the cold testimony of McRae that he basically did this for a reason, not because he had any intent to commit a crime, not because he knew it was a police shooting, but because he had become unhinged. But the jury- And I understand, you know, I'm not taking away from the difficulty of having post-traumatic stress syndrome, but does, is there evidence that this would make him lose touch with reality? Yes. But that evidence never got to the jury. So point that to me specifically. Tell me specifically what he says that makes you think, in other words, that Mr. McRae did not know what he was doing. Not that he was acting, you know, but that he didn't know what he was doing. That's what I'm talking about out of touch. Your Honor, with all due respect, he knew precisely what he was doing. Okay. Well, so then that, to me, isn't that all that you need for 242, is to, in other words, it wasn't like in your sleep, I lean over and hit my husband, you know, asleep, versus in waking hours, I hit him. Those are two different things. Isn't that all we need for 242, that it was willful, that he intended to do it, rather than, you know, like an accident kind of thing? That's not intent to commit a crime. The fact that he decided to burn the body, unless there is some criminal intent, he is not guilty of a crime. But there was nothing to corroborate. What is that criminal intent? In other words— He has to have criminal intent under 242. Right. But what is it? In other words, he admits that he knew he was burning a body. That's not enough. It wasn't like an accident, like, you know, he threw down a match and it caused a fire that he wasn't— Nobody is suggesting that. Okay. So, given that, isn't that all that's required for 242? We don't need motive, and we don't need him to have an evil heart and all that. He just needs to intend to burn the car, and he did burn the—he didn't do it. That's fine, except the defense has a right, under the Constitution, to put on a case, and it may be adequate, absent the testimony such as Dr. Jansen could have provided, and as John Mugovan set forth in his report, that the man—there was a causal connection between the traumatic events he experienced in those three days of rescue and his bizarre act, but there was nothing on the record to connect his act, and there was no connection between the two, and that's what would have been provided by Dr. Jansen and any other experts who would have testified as to the impact of the PTSD. The jury may have accepted it or not accepted it. I think that if I had that doctor on the stand, this jury, with that evidence, coupled with the evidence that the man who people who looked or saw—Layman, other police officers, Wayne Sherman—that he seemed to be unhinged in that period of time, coupled with Greg's own testimony, would have ended up in an acquittal in the case, and that effort we couldn't have because we didn't know about that PTSD finding, and with it, I think it would have changed everything. Is this really more of a 2255 argument of ineffective assistance of trial counsel? Is that really what it is? I mean, I don't want to—do I think there's a 2255 lurking in the background? Yes, but we don't need it. We don't need it because we—this judge should have granted, and I should have at least granted us a hearing on the very questions you're asking could have been answered in an evidentiary hearing that we'd asked for. But Judge Affleck, with all due respect, the original sentence, he—there is no evidence, no serious evidence that this man knew a police officer, whether it be Warren or anyone else, shot this body, killed this man. They pretend there is, but there is none, and we make it clear in our brief. I could recite why that is. The silliness— Let me ask you one question. As I recall, your client testified at trial that he certainly intended to burn the body and do what he did. He said it in a straightforward way. But he said that he did it because he was, in fact, fully aware that in the chaotic conditions that then existed, that to not do that would leave the body in that hot car to be desecrated or whatever, et cetera, et cetera. That was our thought when he testified. If I understand, Your Honor, there's no question he— But that certainly would go to the obstruction of justice, which is now out of the case. Now it's gone. That case should have, with hindsight, should have never gone to the jury. Well, yes. But what I'm saying now is that my question is this particular mental condition that you're arguing to us today, how does that relate to what's remaining in the case? I thought that most of the—in the briefing, that this had been directed toward the obstruction case, which it would be directly relevant to. And then, of course, the Supreme Court took that off the table. So now we're left with the remaining count, the Fourth Amendment count. And the Fourth Amendment count would also require, of course, I think that he exercised with a requisite mental intent. But I'm not clear where we're going with this because— I— The jury stated it another way. The argument I think we're going to hear is that the jury heard and rejected his explanation for his conduct and convicted him of— They found under the instruction given, erroneous though it may have been with hindsight, that he had such intent. And I suggest that there's no way of trying what's left of the case without the issue being front and center. And if intent is still—and it must be. We're not—this is—the issue of criminal intent is not out of the case. Well, the Supreme Court took it out because of—for reasons of disconstructing the—interpreting the statute, that this is simply not reached by the statute. That obstructing justice by destroying an object does not violate the statute. And that period, regardless of the intent that accompanied it or didn't. So that just went out of the case. Now, what are we left with? Unreasonable—in all fairness, Your Honor, it's sort of crazy what we're left with. Insane. I mean, you know, this thing—I want to stay on point, even though the orange light— I understand where you're coming from, the trial lawyer. I know he was a trial lawyer. But what you would have done with the case—but here we are. And the question is, how does this relate to what's left in the case? I suggest, Your Honor, there's no way that the issue of this man's intent is eliminated from the case based on what's left. Counts 4 and I think it's count 7. The use of fire to commit a felony. And fire in the course of a felony. And the issue—I don't want to be back here again on this very issue. There's no way the issue of intent can be removed if a felony, which requires intent, is not litigated. The problem is, what intent does it require? And the intent, as I understand it, is the willfulness to do the act, rather than, again, an accident, I knock over a candle and it burns it down my house, versus I light a match to burn down my house. The reason I'm doing it is irrelevant. Maybe it was to get insurance money. Maybe it was because I didn't like the house anymore, or I thought the house was unsafe, or whatever. So as long as I knew what I was doing, and I wasn't hearing voices telling me to burn down the house, that's all that's required when we're talking about willful intent. That was different under 1519, I agree. I suggest, with all due respect, that if all that's required is that he intended to burn the car, knowing a body was in it, that doesn't make it out. That's what Your Honor is suggesting. What case do you have that says that? It's in our brief. I don't have any more. I don't know that it is in your brief. Your brief is all about 1519. I think what constitutes criminal intent under 242 is in our brief. This is all putting a square peg in a round hole to call this a 242 crime. But Your Honor and I may disagree that I concede, Greg conceded on the stand, he, at the Haven School, when he was told to bring the car with the body over to the levee, he alone had decided to burn it. Bizarre, crazy, wrong, though it may have been. But it wasn't criminal. You've exceeded your time. I want to keep my, if I may, Your Honor. I'll be back. Ms. Thomas? Good morning. Ms. Thomas, let me ask you a question. Suppose that the evidence was that this defendant was told and informed by superiors that that car had a anthrax extract in the car which, if it escaped, could threaten the lives of thousands of people in New Orleans and that they were not to handle it in any way and that, if necessary, that they should burn it. And acting on that, he burned the car. Does he violate 242? He intends to burn it. I think there we'd be looking at a different case as to whether or not that would constitute an unlawful. Why would he not violate 242? I'm trying to highlight the requisite intent. The underlying crime for the 242 was an unreasonable and unlawful seizure of the vehicle. So I think in the hypothetical that Your Honor is presenting, you might have a different question about whether the seizure was unlawful or not, if there was some lawful reason for the car to be seized. In this case, we don't have... The government's theory was in trial that the purpose of this was to obstruct justice. That was your lead argument. This was part of a cover-up. That's out of the case. Now we're left with what Germany's unreasonable, although it is not made unreasonable because it's obstruction of justice. It's unreasonable for what reason? There's no active issue in the case over whether there's sufficient evidence on the 242 charge against Mr... It's undisputed he burned it. He testified to that. It's also undisputed at this point that it was unreasonable to do so. The jury found that it was unreasonable and the conviction is already... What was the jury instructed in that regard? The jury was instructed that McRae had to demonstrate a bad purpose to disregard or disobey the law. The defendant admitted to all of those facts. He admitted that he had decided to burn the car before he ever left Haven School. He admitted that he did that despite the fact that he knew that the car belonged to someone else. In fact, he walked up to the owner of the car, Mr. Tanner, with the keys to the car and said, who owns this car because I'm taking it? He admitted that he burned it despite the fact that it was a working vehicle and that officers had salvaged other working vehicles for parts after the storm. There's no question about... Now let's move to the... I think that's a clear statement. Let's move to the evidence here of his mental state that counsel argues should have been controlling. What is the government's view with regard to what that evidence was? The government's view is that... of what the evidence was at trial as presented? Well, at trial... We're more interested today on this late-arriving diagnosis, etc., about his trauma. With respect to this Dr. Janssen's diagnosis of delayed PTSD, our view, first of all, is that this doesn't constitute new evidence. That diagnosis was made in a September 23, 2005... Sorry, 2010 session note that the defendant attended with Dr. Janssen. That was over a month before trial. And his signature appears at the bottom of that session note. That note states that he appears to be traumatized and has delayed PTSD. So we believe the district court did not abuse its discretion. I understand. That's a timeliness argument, but what about the substantive effect of it? Substantively, our view also is that it would not have affected the outcome of this trial. First of all, again, I want to emphasize that that only that he has delayed PTSD at the time that Dr. Janssen is seeing him, which is five years after the events in question. Is there any evidence that this delayed PTSD, even if it was extant at the time of the burning, would preclude Mr. McRae from understanding the consequences of his acts? In our view, no, there's not. In fact, he, again, he admitted to all of the facts that are necessary for the So let me ask you this. If the only thing, let's say that we had never had the trial on any of these other stuff, and the case sat around for a long time, and the AIDS happened, and all this other stuff happened, and so now we're going to go have the trial, the first instance, on what's left, 242 and 844. Would you, should you win a motion in limine to keep out Dr. Janssen? I believe that that evidence is not particularly relevant to the 242. It's not relevant, it shouldn't come in, so that's my question. Should you win, well, there's still an 854 in the case too, right? Yes, there's an 844 I'm sorry, 844, right. And so, either one, any of the live claims, should you win a motion in limine to preclude Dr. Janssen from testifying? I believe so, Your Honor. And why? Because the only issue is that, is whether McRae had a bad purpose to disregard or disobey the law here, and he, I guess if you're asking if there's a new trial, perhaps it might be relevant to his bad purpose, but if you're taking the evidence as it exists in this case, he admitted to, he admitted that he had. Well, you still have his admission. Yes, so in that case, yes, we should win that motion because he's admitted that he had that bad purpose to disregard or disobey the law. He's never claimed, and does not claim that he is unaware that his act would constitute a seizure of that vehicle. He, again, went up to Mr. Tanner where he sat on the ground and said, whose car is this? I'm taking it. That's an admission that he is aware that somebody else owns that vehicle. He said he had decided to destroy that vehicle. I wonder if the better place for this evidence is in mitigation of his sentencing. You know, when you send it back, have Dr. Janssen come in and say, look, I mean, okay, he did the crime, but he shouldn't do the time because, blah, blah, blah. Does that make any sense? Perhaps so. Perhaps that would be a better place for it. In our view, that still would not should not change the sentence in this case because, in our view, it does not. Dr. Janssen's five years after this incident, diagnosis of delayed PTSD, which is not a diagnosis of his mental state at the time of the crime in question, should not have any effect on the court's view, the district court's evaluation of the evidence in this matter, but if that evidence were to be brought in, that would certainly seem a more appropriate place than here, where I don't believe it belongs at all, Your Honor. It has some testimony at trial, of course, and acknowledges all these things, but one of the things that he says that bears on this is a question. Because you're well aware, as a police officer, the Fourth Amendment of the Constitution means you just can't take people's stuff right? Well, he says, well, during Katrina, we did not know who the vehicles belonged to who were driving in stolen vehicles that we didn't steal. Vehicles that you would basically pull up on a corner, they would get out and run. We would not leave a vehicle like that. In other words, what he's testifying to is the total chaos that's there. In the context of the unreasonableness of burning a car, that would be that left to the jury. What was the jury told about that? I understand, Your Honor, but if I could just make the point that he admitted that he was aware that this car belonged to someone else. He was there when the men drove in to Haven Schoolyard with this car. He was aware it was a functional vehicle, and again, he took the keys and he took an ID card up to Mr. Tanner, where he sat with others on the ground, and said, who owns this car? Who do these keys belong to? I'm taking the car. In two appeals, has there been an appeal of the question of whether this was unreasonable? There has been. There was an appeal. In the first appeal, the issue was raised whether there was sufficient evidence on the two cars. And that's been decided. That's been decided. In our view, that's no longer a live issue in this case, whether or not there was sufficient evidence. I'm not talking about the sufficiency of that substantive offense, I think. But for the mental state issue, he admitted the offense. I mean, that is, he admitted the basic elements of the offense. It burned the car and it belonged to someone else. However, there is a component of the unreasonableness of it. And what he's testifying to, the jury may have properly instructed, may well have rejected that, and I don't know if that point has been observed or not. But the unreasonableness of responding to that, it would be up to the jury to decide. The government's theory was it was unreasonable at trial, what the argument was it was unreasonable not to and you don't accept his explanations because why you were doing this was to obstruct justice. Again, I do not believe that issue is live on appeal. That really is where you went after him. This was a big cover-up case. That's the way you presented it. The argument was that he destroyed Mr. Tanner's vehicle, yes. I know, but he destroyed it as part of a cover-up. Yes, in order to obstruct justice. That was the whole case. That's completely correct. There's no dispute about that. This was an obstruction of justice case and the 242 count was an add-on count by burning the vehicle. That was the means. If it were a conspiracy allegation, there's been another conduct pursuant to an overarching conspiracy theory. I don't want to describe it as if it were some kind of throwaway count. He did seize Mr. Tanner's vehicle. He destroyed that vehicle. Tanner obviously can't get his vehicle back because that car has been burned now. Let me just go quickly to the merits. What I'm suggesting is that if this case were tried without that obstruction of justice counted, it would be a very different case. It would be a different kind of case in the sense that the defendant here has admitted to all of the facts that are necessary to sustain the 242 charge. Again, even if this court were to disagree with that, the fact of the matter is that in our view, the PTSD, this delayed PTSD diagnosis would not have changed the outcome of this case. The defendant submitted copious evidence of his psychological condition. That was really the centerpiece of his defense in the case was that he decided to burn the body not to obstruct mental stress after the storm. He himself testified to feeling helpless and sleepless to the conditions under which he was working. He had other people testify that he seemed to be breaking down, that he was really suffering losing it. In closing, his counsel testified that he was crumbled and that he committed the acts in question because he was a crumbled man. There was copious evidence of his psychological condition and against that, the United States presented evidence that he and others at Haven School knew exactly what had happened to Mr. Glover. They suspected what had happened to Mr. Glover. The defendant himself admitted that he was aware that Mr. Glover had likely not died of natural causes, that he was probably a homicide victim and that there would be some kind of investigation of that. There was evidence presented that one of the officers that had been at the scene of the Glover shooting was then present at Haven School, told others at Haven School that she felt that there might be some connection between these events. McRae's commanding officer in the Special Operations Division got on the radio asking about whether there had been an incident involving this white car that was present at Haven School. There was evidence that McRae ordered a photographer not to take pictures of the scene. The photographer said, I've never before been ordered not to take photographs of a crime scene and that later on, the defendant told him when he asked the defendant what happened with that car and the body, the defendant told him necessary action taken. And there was evidence that of all the bodies recovered after Hurricane Katrina, only this body, that of Henry Glover, who the United States alleged was shot by a police officer, who was shot by  that had been burned. So there was copious evidence that the defendant knew or suspected what had happened to Glover and burned that body for a reason and burned the body inside the vehicle. But does it matter what the reason was to this count? In our view, it does not, but if it does, I just wanted to get that out and answer the question. If this court were to conclude that it does, we still do not feel that it undermines the jury's verdict in this case. But in our view, all the arguments here, 242 is not even cited in the defendant's brief in this case. It's cited in our brief only as part of the introduction describing what had happened. All of the arguments about this PTSD diagnosis, delayed PTSD, were targeted toward the 1519. There have been no arguments going toward the 242. That's what I was wondering. Is this waived? We feel that it would be appropriate to conclude that the argument has been waived. 242, again, it's not cited in the appeal. But even should this court conclude otherwise that it's still a live issue for all of these reasons, we do not feel that certainly that the district court abused its discretion in finding that this evidence doesn't warrant a new trial. The district court sat through the entire trial, was there hearing this evidence, observing the jury. It cannot be an abuse of discretion for the court to have held that a session note and a report written five years after the events in question would not have been the one tiny piece of evidence that would have tipped the scales in the defendant's favor in this case. Let me just turn then quickly to address the arguments regarding leaks and online commenting, if there are no further questions, on the PTSD. In the case of the Grand Jury... Only if this court doesn't have any questions on it, I do not need to address it. I can move on. Does this court have any questions it would like to ask of me on the motion for a new trial about publicity? No. Okay. In that case, I'll just conclude by saying that we feel that the district court did not abuse its discretion with regard to any aspect of the defendant's motion for new trial. District court properly made a prejudice examination with respect to the online commenting issue, properly made that examination with regard to the PTSD evidence, properly made an examination of whether it was newly discovered, and we believe the district court should be affirmed in all respects. Thank you very much. May I? Yes. Judge Haynes, just so we understand our position, when you look at the indictment, let's presume there's no body in the car. You still would have the unreasonable seizure, okay? The indictment says that he did it. Look at count four. He did it under... The violation is a civil rights violation, where CIPE says needs intent. But in more than that, on all four cases in this court, he burned it with, I'm quoting the indictment, burned it without legal justification. Is Your Honor telling me if that's what they claim was done, that mental state is out of the case? Of course not. Well, legal justification would be this hypothet that Judge Higginbotham had about he was ordered because of the anthrax or something like that. Is that even in this case still, given that your sufficiency claims... You and I have a very, very different understanding of what criminal intent is. Well, we just had a U.S. Supreme Court case on it. We know it's not negligence. But the U.S. Supreme Court did not say that it requires that you meant to do something evil. Are you talking about Yates or... I'm talking about Elanis. Oh, excuse me. It doesn't have to be... Elanis makes it clear that negligence isn't enough, so that's why I was talking about if I accidentally set a fire and all this kind of crap, through my testimony and through the experts, the doctors, that what I did was not done with criminal intent because I'm suffering from a mental illness... There are different levels of intent, okay, of criminal intent. Certainly, we know negligence isn't enough. We've got that. But what is necessary to be able to understand it, and frankly, your brief doesn't argue this, that willfulness, you meant to do this act. He knew that he was burning a car that belonged to somebody that was operating... All of that's been admitted. So the fact that he was... I think the PTSD is very relevant to the sentencing. It can mitigate this very... It is a very harsh sentence. I would agree with you on that. And it could mitigate that. But I'm not saying there's no crime. You're saying there's no crime because he was under this incredible stress. If the jury was properly charged as to the level of intent needed and the jury accepted the doctor's testimony that what the symptoms of PTSD is when you suffer from traumatic events, such as seeing dead bodies and the smell of the dead what the testimony is. And the result of that, the causal connection, is when you now have this dead body, not because he was killed by... He's dead. It's a homicide. And in his mind, he wanted to get rid of a body that couldn't. And he testified to that. Of course he did. It doesn't make out a crime. So he testified, and if the jury accepted his testimony, they could have said there was some... It wasn't unreasonable. Let me ask you this. You said if the jury was properly charged. There's been no appeal on the jury charge. So what was the jury charged on this point that relates to what you're arguing? The jury... Remember, the jury charge is on a count that should never have even gone... Well, but I mean... But on this count, what is there in the charge that relates to your we have to accept that they were because you've had two appeals and you haven't challenged the jury charge. So what were they charged on this? What they should... In the case in which we're simply using the count for the indictment, the burning of the car without justification, the seizure and burning of the car without justification, the charge would have to include that if you find this man suffered from a mental disease which negated his intent to... That, I think, is vague. You should have asked for that charge at the time. You should have appealed that in one of the two appeals that are before us. If the charge was inadequate, I don't think you get to raise that now at oral argument after two appeals and umpty-umpt briefs. Well, bear in mind that at the time what was the issue was a cover-up by the police which was fictitious from day one. This court recognized in the first decision that this whole idea of it being a cover-up conspiracy was made out of whole cloth and it tainted this whole case. It even convinced, without evidence, the judge was talking in the first sentencing that you smelled a cover-up. But that's an argument you should have made in the first appeal too that it tainted the whole case. The whole first appeal, there was an appeal on the adequacy of 15... of the validity of 1519 which this court found all you needed was an intent, as the judge charged, all you needed was an intent to obstruct an investigation. And there was no objection to that. We agree with that. But that charge would not be sufficient. That charge should have been... not have even been necessary because the case had no basis on the law, as we now know. I think I'm being told that I'm going to talk all day unless I stop. Thank you very much.